UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Gary Bowser and Shannon Bowser

   v.                                      Civil No. 15-cv-154-LM
                                        Opinion No. 2015 DNH 149
MTGLQ Investors, LP and
Ocwen Loan Servicing, LLC

**O R D E R**

In the above-captioned matter, Gary and Shannon Bowser have sued MTGLQ Investors, LP ("MTGLQ") and Ocwen Loan Servicing, LLC ("Ocwen") in nine counts, asserting various claims arising out of their unsuccessful attempt to obtain a modification of their mortgage loan. Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Bowsers objected. On June 30, 2015, the court held oral argument on defendants' motion to dismiss. During the hearing, and for reasons stated from the bench, the court dismissed seven of the nine counts. The court took under advisement defendants' motion as to the remaining two counts. For the reasons that follow, the court grants defendants' motion to dismiss in full.

**I.    Background**

A. Factual Allegations

The factual allegations are drawn from the Bowsers' complaint. In 2005, the Bowsers purchased a property in Rye, New Hampshire, obtaining title by warranty deed. To secure the

loan, they executed a mortgage that provided for a loan servicer to collect payments and otherwise manage their loan obligations.[1] In 2014, the Bowsers went into arrears on the loan.  Ocwen, the loan servicer, returned their May 2014 partial payment, and instructed them to apply for a loan modification.

In accordance with Ocwen's instructions, the Bowsers applied for a modification under the Home Affordable Modification Program ("HAMP") in October 2014.  The Bowsers allege that Ocwen, during the application review process, improperly based its assessment of their financial capabilities on the history of the loan rather than on their existing ability to pay.  The Bowsers further allege that, despite their timely response to every request from Ocwen for supporting documentation, Ocwen insisted that their modification application was incomplete.  As a result, Ocwen denied the Bowsers' application.

B. Procedural Backdrop

The Bowsers filed a nine-count complaint in Rockingham County Superior Court, asserting claims for: (I) negligence; (II) negligent misrepresentation; (III) fraud; (VI) equitable

---

[1] The complaint does not set forth the loan history in great detail.  For instance, it is unclear if MTGLQ was the original mortgagee, or acquired the mortgage by assignment or other transfer of rights. Nonetheless, MTGLQ is the current mortgagee.

estoppel; (V) promissory estoppel; (VI) breach of the covenant of good faith and fair dealing; (VII) violation of New Hampshire's consumer protection statute (N.H. Rev. Stat. Ann. § 358-A); (VIII) negligent infliction of emotional distress ("NIED"); and (IX) a count entitled "Standing."  Defendants removed the case to this court and promptly filed a motion to dismiss as to all nine counts (doc. no. 4), arguing that the Bowsers failed to state a claim on which relief can be granted.

At the June 30, 2015 hearing on the motion to dismiss, the Bowsers' counsel consented to dismissal of Counts III, IV, VII, and IX as to both defendants, and Counts I and VIII as to MTGLQ.  After hearing argument on the remaining counts, the court granted defendants' motion to dismiss Counts I and VIII as to Ocwen, and Count V as to both defendants.  The court took under advisement defendants' motion to dismiss as to Counts II and VI.

## II.  The Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation and internal quotation marks omitted).  A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

### III. Discussion

Before ruling on the remaining two counts, and for the sake of clarity, the court begins by summarizing the reasoning behind its decision to orally grant, over the Bowsers' objection, defendants' motion to dismiss Counts I and VIII as to Ocwen, and Count V as to both defendants.

#### A. Counts Dismissed Orally at the Hearing

##### 1. Count I - Negligence

At the hearing, the Bowsers objected to dismissal of Count I as to Ocwen. They argue that Ocwen is liable to them for negligently mishandling and wrongfully denying their loan modification application. Compl. ¶ 37. Specifically, the Bowsers allege that defendants breached a duty "by their misrepresentations and omissions throughout the holding of the loan, servicing of the loan, and the HAMP modification process." Id. ¶ 34.

Under New Hampshire law, however, the contractual relationship between a lender and borrower typically precludes recovery in tort. Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 133 (D.N.H. 2012) (citing Wyle v. Lees, 162 N.H. 406, 409-10 (2011)). This principle, known as the "economic loss doctrine," operates on the theory that "[i]f a contracting party is permitted to sue in tort when a transaction does not work out as expected, that party is in effect rewriting the agreement to obtain a benefit that was not part of the bargain." Plourde Sand & Gravel Co. v. JGI E., Inc., 154 N.H. 791, 794 (2007) (quoting Tietsworth v. Harley-Davidson, Inc., 677 N.W.2d 233, 242 (Wis. 2004)). Thus, where a borrower claims the existence of a duty outside the contractual relationship, he has the burden of proving that the lender voluntarily engaged in "activities beyond those traditionally associated with the normal role of a money lender." Moore, 848 F. Supp. 2d at 133 (citing Seymour v. N.H. Sav. Bank, 131 N.H. 753, 759 (1989)). This burden extends to claims against mortgagees as well as loan servicers.[2]  Id.

---

[2] The Bowsers argued at the motion to dismiss hearing that the economic loss doctrine does not apply to their tort claims against Ocwen because, as a loan servicer, Ocwen was not a party to their mortgage. The court disagrees. For one, Ocwen's role in servicing the Bowsers' loan on the mortgagee's behalf is sufficient to create an agency relationship between Ocwen and the mortgagee. See LaCourse v. Ocwen Loan Servicing, LLC, No. 14-cv-013-LM, 2015 WL 1565250, at *3 (D.N.H. Apr. 7, 2015).

5

The Bowsers' allegations, however, do not establish that Ocwen engaged in any extra-contractual conduct that would give rise to a cognizable duty. Nor does HAMP on its own create an independent duty. MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 496 (1st Cir. 2013) (quoting Brown v. Bank of Am. Corp., No. 10-11085, 2011 WL 131128, at *4 (D. Mass. Mar. 31, 2011). They allege only that "Defendants lied when they claimed they could not complete the Plaintiffs' modification," and that "Defendants mishandled and wrongfully denied the Plaintiffs' modification application." Compl. ¶¶ 35, 37. Since the Bowsers do not allege any wrongdoing unconnected to Ocwen's handling of their mortgage and loan modification application, their negligence claim cannot overcome the economic loss doctrine. Thus, the court dismissed Count I as to Ocwen.

### 2. Count V - Promissory Estoppel

At the hearing, the court dismissed Count V as to both defendants over the Bowsers' objection. In their complaint, the Bowsers allege the following facts in support of their promissory estoppel claim:

> Relying on the representations of the Defendants the Plaintiffs failed to pursue alternative options, resulting in the addition of unjust fees to their loan

---

Moreover, in New Hampshire, purely economic losses are generally not recoverable in tort, and the economic loss doctrine bars such tort claims regardless of whether contractual privity exists between the parties. See Plourde Sand & Gravel Co., 154 N.H. at 795-96.

> . . . Defendants <u>promised</u> to help Plaintiffs avoid the possibility of foreclosure.  The Defendants intended such promises to induce Plaintiffs to continue making mortgage payments, which they did – all to the detriment of the Plaintiffs and the benefit of the Defendants.  The Defendants should be estopped from foreclosing on the Plaintiffs' home.

Compl. ¶¶ 30, 84-85, 87 (emphasis added).  They argue, in essence, that Ocwen promised not to initiate foreclosure activities while it reviewed the Bowsers' loan modification application.  Because of this promise, the Bowsers allege that they did not pursue alternative options to prevent foreclosure.  <u>See</u> compl. ¶ 30.

As evidence of Ocwen's promise, the Bowsers attached to their objection to defendants' motion to dismiss a copy of the Request for Mortgage Assistance ("RMA") form that they filed with their loan modification application.  The RMA states, in pertinent part, that "[i]f [Ocwen] receives your Complete Application for modification at least 7 business days before a scheduled foreclosure sale date, [Ocwen] will not complete the foreclosure action until [they] review and decision [sic] [the] application."  RMA (doc. no. 5-2) at 2.  The Bowsers reiterated at the hearing that the promise that forms the basis of their promissory estoppel claim is indeed the one proffered in the RMA.

Ordinarily on a motion to dismiss, if the court considers documents outside the complaint, the court must convert the

7

motion into one for summary judgment.  Foley, 772 F.3d at 73. The First Circuit, however, recognizes a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Id. at 74 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Defendants do not object to the court's consideration of the RMA in ruling on the motion to dismiss.  Because the RMA is central to the Bowsers' promissory estoppel claim, and its authenticity is not disputed, the court will consider it for the purposes of this motion to dismiss.

At the hearing, the court found that the Bowsers failed to state a claim as to Count V for two reasons.  First, and most importantly, the Bowsers do not allege in their complaint that defendants failed to keep their promise to forestall foreclosure.  Indeed, they do not allege that defendants have even scheduled a foreclosure sale.  Second, although the Bowsers allege that they neglected to pursue alternatives to foreclosure in reliance on defendants' promise, this allegation alone is insufficient to demonstrate that their reliance was detrimental. The court cannot reasonably infer that the Bowsers could have avoided foreclosure or would have "been better off in any way, but for their reliance on [their loan servicer's] supposed promise to consider them for a loan modification."  MacKenzie,

738 F.3d at 497 (applying Massachusetts law). Accordingly, the court dismissed Count V as to both defendants.

### 3. Count VIII - NIED

Finally, the court orally dismissed Count VIII as to Ocwen over the Bowsers' objection. The Bowsers argue that Ocwen's failure to "deal with the Plaintiffs in a commercially reasonable manner," including mishandling their modification application, caused numerous physical ailments, such as "loss of appetite, upset stomach, head ache, sleeplessness, etc." Id. at ¶¶ 107, 108.

"[A] claim for NIED, like any other negligence claim, demands the existence of a duty from the defendant to the plaintiff." Moore, 848 F. Supp. 2d at 135 (quoting BK v. N.H. Dep't of Health & Human Servs., 814 F. Supp. 2d 59, 72 (D.N.H. 2011)). As discussed above with respect to their negligence claim, see supra at 4-6, the Bowsers' NIED claim fails to allege a legally cognizable duty that Ocwen owed them outside the traditional lender-borrower relationship. For this reason, the Bowsers fail to state a claim for NIED against Ocwen. See Moore, 848 F. Supp. 2d at 135. On this basis, the court dismissed Count VIII as to Ocwen.

B. Remaining Counts

Having granted defendants' motion to dismiss as to Counts I, III-V, and VII-IX at the hearing, the court now resolves the remaining Counts II and VI.

1. Count II - Negligent Misrepresentation

The Bowsers base their claim for negligent misrepresentation on two grounds.  First, they point to defendants' allegedly false assurances that, if the Bowsers successfully completed their application, they would be able to obtain a HAMP modification.[3]  Compl. ¶ 44.  Second, the Bowsers allege that defendants' made "inconsistent and inaccurate representations" concerning the modification process.  Id. at ¶ 47.  Defendants argue that Count II fails to allege facts sufficient to state a negligent misrepresentation claim, and, in any event, is barred by the economic loss doctrine.  Both of defendants' arguments are meritorious.

Under New Hampshire common law, the elements of a claim for negligent misrepresentation "are a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff."  Wyle, 162 N.H. at 413 (citing Snierson v.

---

[3] One of the major problems with the complaint is that it does not specify whether Ocwen or MTGLQ is at fault.  Instead, the complaint refers throughout to Ocwen and MTGLQ jointly as "defendants" in each count.  It appears, however, that the majority, if not all, of the Bowsers' claims concern Ocwen's alleged wrongdoing.

Scruton, 145 N.H. 73, 78 (2000)).  Moreover, "[i]t is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them."  Id.

The Bowsers' complaint does not allege facts sufficient to support a claim for negligent misrepresentation because it fails to allege how, if at all, defendants' misrepresentations were material to the Bowsers' decisions concerning their loan modification application.  For example, the Bowsers allege that defendants "falsely informed the Plaintiffs that the application was not complete, despite the Plaintiffs' compliance with all documentation requests."  Compl. ¶¶ 29.  Though this allegation describes a potentially negligent misrepresentation, nothing in the complaint clarifies how this statement was material or, for that matter, how the Bowsers justifiably relied on the defendants' statement.  The Bowsers allege that they "relied on [defendants'] misrepresentations . . . to their detriment," Compl. ¶ 52, yet they allege no facts to support this conclusion.  As such, this allegation is merely conclusory and therefore insufficient.  Similarly, the allegations concerning defendants' duty to verify information are nothing more than conclusory recitations of the "failure to verify" element: "Defendants did not take care to verify that their

11

representations were correct before making them." Compl. ¶ 51. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot suffice to state a claim for relief under federal pleading standards. Ashcroft, 556 U.S. at 678.

Even if the Bowsers' allegations were sufficient to permit a reasonable inference that defendants made negligent misrepresentations of material fact regarding the loan modification process, the claim would nonetheless be barred by the economic loss doctrine. The First Circuit made clear in Schaefer v. Indymac Morg. Serv. that where a complaint alleges merely that a lender made misrepresentations "concern[ing] the process by which the lender[] would decide whether or not to exercise their contractual right to foreclose the mortgage . . . [such a claim] is barred by the economic loss doctrine." 731 F.3d 98, 109 (1st Cir. 2013). In Schaefer, as alleged in the present case, the plaintiff mortgagor submitted a completed loan modification application to the defendant lender/loan servicer, after which defendant requested duplicative portions of the application and gave plaintiff misleading or incorrect information concerning the application process. Id. at 101-02. The First Circuit acknowledged that New Hampshire law provides an exception to the economic loss doctrine where negligent misrepresentations induce a party to enter into a contract. Id.

at 108-09 (citing Wyle, 162 N.H. at 411).  However, this exception did not apply in Schaefer, because the defendant's alleged misrepresentations occurred during the contract's performance and concerned the subject matter of the contract, i.e., the mortgage.  Id. at 109.

Likewise, in the instant case, Ocwen's offer to forestall foreclosure was directly related to the Bowsers' mortgage and performance of the loan contract.  The economic loss doctrine, therefore, bars their negligent misrepresentation claim.  Accordingly, the court dismisses Count II.

### 2. Count VI – Breach of the Covenant of Good Faith and Fair Dealing

Count VI is the Bowsers' claim that Ocwen breached the covenant of good faith and fair dealing implied in the parties' agreement to "work out resolution [sic] with the mortgage."  Compl. ¶ 91.  The Bowsers claim that this agreement involved an offer that was "definite in material terms," and outlined reasonably certain "promises and performances."  Id. at ¶ 92.  They allege that defendants violated the covenant implied in this agreement by "misrepresenting the Plaintiffs' qualification status for modification," and by "failing to raise and/or offer alternative modification options."  Id. at ¶96.  Defendants counter that the Bowsers have not established that a contract

13

existed between the parties beyond the mortgage, and, as such, the Bowsers have no basis for their claim.

The Bowsers do not dispute that under New Hampshire law, "[a] necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing is a contract between the parties." Moore, 848 F. Supp. 2d at 127; see also J&M Lumber & Constr. Co. v. Smyjunas, 161 N.H. 714, 724 (2011). In Moore, this court held that a borrower cannot use the covenant of good faith and fair dealing implied in a loan agreement to require a lender to modify a loan. 848 F. Supp. 2d at 130; see also Ruivo v. Wells Fargo Bank, N.A., No. 11-cv-466-PB, 2012 WL 5845452, at *4 (D.N.H. Nov. 19, 2012) ("[P]arties are bound by the agreements they enter into and the court will not . . . force a party to rewrite a contract so as to avoid a harsh or inequitable result."). Unlike the plaintiffs in Moore, who relied on their mortgage as the contract underlying their claim for breach of the covenant of good faith and fair dealing, the Bowsers rely on the language of the RMA, which contains defendants' promise to forestall foreclosure while defendants consider the modification application. Compl. ¶ 91; Pls.' Obj. (doc. no. 5) at 5-6.

Such a promise, however, cannot support their claim for breach of the covenant of good faith and fair dealing. As Chief Judge Laplante noted in Pro Mod Realty, LLC v. U.S. Bank Nat.

Ass'n, "[w]ords of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen . . . do not constitute a promise . . . . [S]uch words are often referred to as forming an illusory promise." No. 13-cv-498-JL, 2014 WL 1379341, at *2 (D.N.H. Apr. 9, 2014) (quoting Restatement (Second) of Contracts § 2 cmt. e (1981)). Defendants' promise did not bind them to any decision with respect to the Bowsers' application, and therefore cannot serve as consideration for a contract. See Downeast Energy Corp. v. Frizzell, No. 2010-0401, 2011 N.H. Lexis 102, at *2-3 (N.H. July 6, 2011); Schell v. Kent, No. 06-cv-425-JM, 2008 WL 4610006, at *5 (D.N.H. Oct. 15, 2008). Without an exchange of consideration, the parties did not form a contract, and without a contract, the Bowsers cannot sustain a claim for breach of the covenant of good faith and fair dealing. Moore, 848 F. Supp. 2d at 127. Moreover, as discussed above with respect to the Bowsers' promissory estoppel claim, see supra at 5-8, the Bowsers do not allege that defendants have initiated foreclosure proceedings. Therefore, even if a valid contract existed between the parties, there can be no breach of the covenant of good faith and fair dealing where there is no allegation that defendants have done anything other than fully comply with their express obligations under the contract. Accordingly, the court dismisses Count VI.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss (doc. no. 4) is granted in full. The clerk of the court shall dismiss the Bowsers' complaint and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 11, 2015

cc:  Keith A. Mathews, Esq.
     Jessica Suzanne Babine, Esq.